# In the United States Court of Federal Claims

No. 11-160C
(Filed January 31, 2012)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * | * |
| | * |
| **LAWRENCE MENDEZ, JR.,** | * Military pay; jurisdiction; Military Pay |
| | * Act, 37 U.S.C. § 204 (2006); motion for |
| Plaintiff, | * judgment on the administrative record; |
| | * review of military correction board |
| v. | * action; Marine Corps Order P1610.7F, |
| | * Performance Evaluation System (Nov. |
| **THE UNITED STATES,** | * 19, 2010); harmless error; presumption |
| | * of regularity; RCFC 52.1 remand. |
| Defendant. | * |
| | * |
| * * * * * * * * * * * * * * * * * * | * |

<u>Charles W. Gittins</u>, Middletown, VA, for plaintiff.

<u>Matthew F. Scarlato</u>, Washington, DC, with whom was <u>Assistant Attorney General Tony West</u>, for defendant. <u>Lt. Chris Jeter</u>, Department of the Navy General Litigation Division, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

This case is before the court on the parties' cross-motions for judgment on the administrative record. Plaintiff seeks correction of his military records for improper discharge from the United States Marine Corps based on two failed attempts at promotion stemming from a challenged adverse fitness report. The focus of plaintiff's many recitals of error in connection with the preparation of this report is whether the reviewers addressed factual conflicts as required by regulations. Argument is deemed unnecessary.

## FACTS

### I. Background

The facts contained herein are drawn from the administrative record. Lawrence Mendez, Jr. ("plaintiff"), formerly served as an officer in the United States Marine Corps (the

"USMC").  AR 1.  In September 2006 he was assigned duties of Battalion Adjutant of the 1st Battalion, 12th Marine Regiment, 3rd Marine Division.  Id.  His unit was deployed to Iraq in support of Operation Iraqi Freedom on March 28, 2007.  Compl. filed Mar. 14, 2011, at ¶ 4.  In July 2007 plaintiff was relieved of his duties as Battalion Adjutant for cause by his commanding officer, Lt. Col. Stephen E. Liszewski.  AR 47.  Following removal from his post, plaintiff was provided with a USMC Fitness Report ("the report" or "the fitness report") that evaluated his performance from February 1, 2007, through July 28, 2007.  See id. at 1-8.  The fitness report identified Lt. Col. Michael S. Casey as the Reporting Senior ("the RS") and Lt. Col. Liszewski as the Reviewing Office ("the RO").  Id. at 1.

The RS initially prepared the fitness report on September 10, 2007.  In that report the RS made several statements that described plaintiff as deficient in various evaluation categories.  See id. at 2-7.  In the Mission Accomplishment category, the fitness report stated that plaintiff lacked Military Occupational Specialty ("MOS") knowledge and an ability to lead.  Id. at 2.  The RS explained that plaintiff's failings in this regard resulted in "[c]ontinued inaccurate and false reporting of information on awards" and Sea Service Deployment Ribbons ("SSDRs").  Id. at 6.  As for plaintiff's assessment in the Individual Character category, the report stated that plaintiff "did not accept responsibility for his short comings [sic]" and that he "deflected blame for problems that he caused."  Id. at 2.  The RS further noted that plaintiff "displayed and verbalized an insolent behavior towards senior officers in front of junior Marines."  Id.

Plaintiff fared no better with respect to his evaluation in the Leadership category.  The RS remarked that plaintiff's "[f]ail[ure] to supervise the administrative section" contributed to "correspondence riddled with mistakes, inability to process awards and failure to secure sensitive personnel information."  Id. at 3.  The RS further stated that plaintiff "[f]ailed to develop subordinates in functional areas," "micromanaged" Marines, and stifled any initiative his troops asserted.  Id. at 6.  The RS also questioned the manner in which plaintiff assisted a subordinate whose spouse was due to undergo routine surgery in the near future.  Id. at 6-7.  Noting that the command's policy was to limit the use of emergency leave, the RS chided plaintiff for "wait[ing] until the last possible minute" to assist the Marine in finding a way to ensure his spouse was cared for in his absence.  Id. at 6.  The RS commented that plaintiff's mismanagement "forc[ed] the command to send the Marine home from a combat zone."  Id. at 7.  Additionally, the RS stated that plaintiff knew that the Marine was improperly using a Red Cross message from another Marine who had been granted emergency leave as an example of how to word his own message to ensure that he, too, would be granted emergency leave.  Id.  Because the USMC does not favor granting emergency leave to deployed Marines, the young Marine's possession of the Red Cross message was seen as an attempt to circumvent the policy favoring alternatives to emergency leave.  See id.  Despite his knowledge of this improper use, plaintiff failed to chastise the

Marine or prevent use of the Red Cross message until his command became aware of the situation.  Id.

With respect to the Intellect and Wisdom category, the RS questioned plaintiff's ability "to find timely solutions to problems," noting that this led to plaintiff's "failure to . . . facilitate . . . joining all Marines to the Task Force," id. at 4, in contravention of direct orders from the RS and the RO, id. at 7.  Moreover, the RS indicated that plaintiff had falsely reported that the SSDRs were recorded in the record books for all Marines serving as a part of the Task Force.  Id.  In the Comparative Assessment section of the fitness report, the RS compared plaintiff to other Marines of the same grade and described plaintiff as "unsatisfactory."  Id. at 5.  In concluding, the RS opined that plaintiff should "not be considered for promotion with [his] contemporaries."  Id. at 8.

Plaintiff submitted a five-page rebuttal to the RS's fitness report on September 14, 2007.  See id. at 9-13.  He provided his own narrative summary and challenged the RS's comments.  He first explained that "[a]wards are no longer entered into a Marine[']s service record," id. at 9, and thus could not have been inaccurately reported.  As for the SSDRs, plaintiff offered an alternative explanation for any perceived failures to record these ribbons, explaining that reporting was delayed because all personnel were being added to the reporting unit code used by plaintiff.  Id.  Plaintiff disputed allegations that he was disrespectful to superiors and micromanaged subordinates.  Id. at 11.  He stated that he advised the Marine whose spouse would need assistance following surgery of alternative ways to ensure that such care was provided.  Id.  In opposition to the RS's recitation, plaintiff noted that he counseled the Marine not to use the Red Cross message that he had obtained.  Id. at 12.

On September 24, 2007, the RO reviewed the RS's report in conjunction with plaintiff's comments and added comments of his own.  See id. at 14-16.  Marine Corps Order P1610.7F, Performance Evaluation System, ¶ 2004.3.g. (Nov. 19, 2010), requires the RO to "[a]ssess adverse reports and adjudicate factual differences between the RS's evaluation and the [plaintiff]'s statement."  */  In accordance with MCO P1610.7F ¶ 2004.3.g., the RO noted that he "identified the . . . inconsistencies between RS and MRO ["Marine Reported On," in this case, plaintiff] statement[s] that require adjudication [and] . . . in adjudicating th[o]se inconsistencies . . . solicited input from the MRO, the RS, appropriate staff officers,

_____

*/  The court recognizes that the version of MCO P1610.7F cited postdates the events that occurred in this case.  Although earlier versions were found, the court will apply the provisions of the version provided by the parties in the administrative record.  The court is operating under the assumption that, if the applicable paragraphs in this later version differed substantively from those in effect at the time this matter arose, the parties would have included the earlier version in the administrative record.

commanders, and senior enlisted advisors to clarify differences between the report and the MRO's rebuttal." AR 14. The RO's review confirmed many of the RS's findings. Specifically, the RO stated that plaintiff micromanaged his Marines to such an extent that they were unable to accomplish their assigned tasks. Id. He also noted that plaintiff occasionally would cancel scheduled training exercises and, instead, would have "the section conduct physical training or watch videos for entertainment." Id. at 15. Further, the RO found that plaintiff would assign tasks to his Marines without coordinating with the officer who would oversee completion of these tasks and later would attempt to hold the overseer accountable when tasks were not completed. Id. The RO also determined that plaintiff—sometimes in front of subordinates—"displayed argumentative and insolent behavior" toward superiors. Id. Lastly, the RO found that plaintiff falsely reported that all of the SSDRs had been recorded and failed to clarify his report when informed that his assertion was inaccurate. Id. at 15-16.

In reviewing the manner in which plaintiff assisted the Marine whose spouse was to undergo surgery, the RO noted that the Marine informed plaintiff of the surgery thirty days before it was scheduled. Id. at 15. Despite this advance notice, the RO found that plaintiff "failed to develop a solution to th[e] problem that would facilitate care for the wife and allow the Marine to remain on deployment." Id. One member of the command identified "in-home medical care using TRICARE resources" as a "workable solution," but, according to the RO, plaintiff failed to follow up regarding this option, and it therefore was not made available to the Marine and his wife. Id.

Plaintiff responded to the RO with a three-page rebuttal on September 27, 2007. See id. at 17-19. He disputed the RO's finding that he replaced scheduled training exercises with physical training or entertainment and explained that, when he did opt for physical training, he had his men "execute combat patrols formations, [use] hand and arm signals, set[] up a vehicle checkpoint . . . , and [practice] first aid . . . ." Id. Plaintiff then justified his failure to coordinate task assignments with the officer who would oversee their completion by noting that that officer "spent 13 to 17 days visiting other sites within the Task Force." Id. at 18. Plaintiff further contended that he did communicate with this officer and never placed blame on him when tasks were not completed. Id. As for his inaccurate report that all of the SSDRs were recorded, plaintiff did not recollect that anyone informed him that his report was in error. Id. at 19. Lastly, in addressing the Marine who sought emergency leave, plaintiff noted that he was in "disbelief" upon learning of the in-home medical care option. Id. He then stated that, despite the existence of such a program, he learned upon further inquiry that "Tricare did not offer the home care that [the Marine's] spouse required." Id.

On October 7, 2007, Brig. Gen. Charles M. Gurganus, serving as the Third Officer Sighter (the "TOS"), reviewed the fitness report and comments from the RO and plaintiff. See id. at 20-21. The TOS identified those areas in which plaintiff disagreed with the RS and

the RO. Id. Despite acknowledging the areas of disagreement, the TOS confirmed the findings of the RS and the RO. Id. at 20. Specifically, he noted that plaintiff admitted that he failed to submit reports on time, was "too involved with the minutia of the section," and had "poor communication with the Admin Chief." Id. The TOS also stated that plaintiff "failed to thoroughly research available solutions that a young Marine in his section needed," yet "was surprised when the situation could not be resolved." Id. Finally, the TOS commented that plaintiff did not deny the accusation that he falsely reported that all of the SSDRs were recorded. Id. at 21. The TOS thus concluded that plaintiff "failed to perform his duties to the satisfaction of both the RS and the RO." Id.

II. Procedural history

On December 3, 2008, plaintiff appealed the adverse fitness report by filing an Application for Correction of Military Record with the Board for Correction of Naval Records (the "BCNR" or "the Board"). Id. at 126. Plaintiff mounted four challenges: (1) the fitness report did not comply with MCO P1610.7F and contained inconsistent statements from the RS who prepared the report; (2) the RO failed to resolve various disagreements between the RS and plaintiff; (3) the TOS introduced new adverse material without providing plaintiff an opportunity to respond to the new material; and (4) the TOS failed to resolve disagreements between the RO and plaintiff. See id. at 127-131. Plaintiff explained that the fitness report set forth various attributes and required the RS to evaluate the extent to which plaintiff fulfilled those attributes. According to plaintiff, the RS rated plaintiff adversely without providing proper justification. Id. at 127. The USMC Performance Evaluation Review Board (the "PERB") conducted the first review and issued an advisory opinion on March 2, 2009, in which it concluded that "the contested fitness report [wa]s administratively correct and procedurally complete." Id. at 122. The PERB, noting that many of the evaluated attributes overlapped, found that the RS had properly justified his ratings and that plaintiff's contention to the contrary lacked merit. Id.

Plaintiff thereafter filed an undated rebuttal to the PERB's report. See id. at 16-19. On April 9, 2009, the BCNR considered plaintiff's application and denied his request, indicating that the Board "substantially concurred" with the PERB's report. Id. at 114. Acknowledging the PERB's finding that plaintiff did not "argue that the facts of the report are untrue or unjust," id. at 123, the BCNR noted that plaintiff's rebuttal letter explicitly did challenge the fitness report as untrue or unjust, id. at 114. On August 21, 2009, plaintiff filed a request for reconsideration. See id. at 110; Compl. ¶ 22. The PERB responded on December 28, 2009, with an advisory opinion that would deny plaintiff's request for removal of the adverse fitness report from his record. See AR 98-99. Plaintiff filed a rebuttal letter to the PERB decision on January 7, 2010. See id. at 94. On April 9, 2010, the BCNR voted to deny the requested relief. Id. at 95.

On March 14, 2011, plaintiff filed a complaint in the United States Court of Federal Claims. He alleged that he was involuntarily separated after he was twice denied promotion to the rank of captain. Following removal from his post, plaintiff was provided with a fitness report that evaluated his performance for the period immediately preceding his removal. Alleging that the fitness report is defective in that it failed to comply with USMC regulations, plaintiff seeks reinstatement and back pay from the date of his relief from active duty, as well as removal of the contested fitness report from his record.

## DISCUSSION

### I. Subject matter jurisdiction

The jurisdictional predicate for plaintiff's complaint and subsequent cross-motion for judgment on the administrative record is 37 U.S.C. § 204 (2006) (the "Military Pay Act"). It is well established that the Military Pay Act is a money-mandating statute and that claims for back pay based on the Military Pay Act are within the jurisdiction of the Court of Federal Claims. Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006). Defendant, however, raises the objection that this case is not grounded in the Military Pay Act. Def.'s Br. filed Aug. 11, 2011, at 7-10. According to defendant, to invoke the Military Pay Act as the source of the court's jurisdiction, plaintiff must show either a "'clear-cut legal entitlement'" to the promotion for which he was passed over, id. at 7 (quoting Skinner v. United States, 594 F.2d 824, 830 (Ct. Cl. 1979)), or a compelled discharge resulting from the failure to promote, id. at 8 (citing Smith v. Sec'y of Army, 384 F.3d 1288, 1295 (Fed. Cir. 2004)). In the former circumstance, the Court of Federal Claims will have jurisdiction if a plaintiff can demonstrate that, although "he has satisfied all the legal requirements for promotion, . . . the military has refused to recognize his status." Id. at 9. With respect to the latter, the Court of Federal Claims will have jurisdiction if a plaintiff can show that

> the effect of an order voiding the nonpromotion decision would be to give the service member a right to continue in the service at his previous rank . . . . In that instance, the Military Pay Act would give the service member a right to back pay, because the Act "confers on an officer the right to pay of the rank he was appointed to up until he is properly separated from the service."

Smith, 384 F.3d at 1295 (quoting Sanders v. United States, 594 F.2d 804, 810 (Ct. Cl. 1979)).

Apparently dispensing with any discussion as to whether or not plaintiff has a "clear-cut legal entitlement" to the promotion, Skinner, 594 F.2d at 830, defendant explains that plaintiff's claim is not of the latter type because plaintiff "puts the cart before the horse" by alleging that he was improperly separated after his failure to promote instead of arguing, more appropriately, that the decision not to promote him—which was based on a defective

fitness report—was erroneous and resulted in his involuntary separation.  Def.'s Br. filed
Aug. 11, 2011, at 8-9.  Defendant further contends that plaintiff was required to advance the
theory that the adverse fitness report violated USMC regulations and, consequently, was
improperly considered for purposes of promotion.  See id.  Because the BCNR already has
declined to remove the fitness report, defendant concludes that plaintiff's suit actually "seeks
. . . administrative review of the BCNR's decision not to remove or correct the fitness
report."  Id. at 9.

Defendant's argument cannot displace the settled precedent confirming jurisdiction
over claims such as plaintiff's, given "the crowded parade of suits by former military officers
who have been separated from the service, denied promotion, or relieved from active duty,
allegedly on the basis of defective [performance] reports."  Hary v. United States, 618 F.2d
704, 705 (Ct. Cl. 1980).  The United States Court of Claims—predecessor to the United
States Court of Appeals for the Federal Circuit—long has held that such cases fall within the
jurisdiction of the Court of Federal Claims.  See id. at 705-06 (exercising jurisdiction over
officer's challenge to passovers for promotion and consequent involuntary separation
allegedly resulting from inaccurate officer effectiveness reports); Sanders, 594 F.2d at 811
("This court has jurisdiction over those cases claiming lost pay that not only contest the
failure of a military correction board to correct an alleged legal or factual error but also the
failure of a correction board to remove a prejudicial injustice, as required under its statutory
mandate.").

Similar to plaintiff in the instant case, the Sanders plaintiff was involuntarily separated
after twice being passed over for promotion.  See Sanders, 594 F.2d at 806.  Alleging that
the passovers were occasioned by various defective officer effectiveness reports in his
record, the plaintiff sought their removal by the correction board.  See id. at 807.  Although
initially denying the plaintiff's request, the correction board, on reconsideration,
recommended removal of the reports for error, unfairness, and injustice.  See id. at 808.  The
board, however, did not void the promotion passovers.  On review of the board's action, the
Court of Claims explained that the plaintiff had not asserted a claim for promotion; rather,
he had alleged wrongful discharge and a claim to money wrongfully retained.  See id. at 810.
Noting that the Military Pay Act "confers on an officer the right to the pay of the rank he was
appointed to up until he is properly separated," the court determined that jurisdiction was
proper because plaintiff alleged "that he ha[d] been improperly terminated by the Air Force
and that the Correction Board erred in denying monetary relief for the illegal separation."
Id. (footnote omitted).

The court further remarked that, given the alleged inaccuracy of the evaluation
reports, "[t]he real genesis of plaintiff's claim [wa]s the failure of the selection boards to
consider him on the basis of a record [that] portrayed his service career on a fair and
equitable basis . . . ."  Id. at 814 (citation omitted) (internal quotation marks omitted).  If the

reports considered by the selection board are not prepared as prescribed by governing regulations and "that defect could have resulted in [the plaintiff's] nonselection for promotion followed by discharge, this is legal and factual error and an injustice to the officer . . . ." Id. Where such error has occurred, the Court of Claims explained, a plaintiff may seek correction of his record from a correction board. Id. If correction does not make him whole, the court "can and will protect the citizen-soldier's legal rights if he is claiming lost pay and reinstatement." Id.

Later in Adkins v. United States, 68 F.3d 1317 (Fed. Cir. 1995), the United States Army informed the plaintiff that "he had been selected for mandatory early retirement . . . because he had been passed over for promotion . . . and was not presently on a promotion list." Id. at 1319-20. Deeming the plaintiff's retirement involuntary, the Court of Federal Claims, under its earlier title, held that it had jurisdiction over the claim for reinstatement to active duty and back pay. Id. at 1320. In upholding the court's assertion of jurisdiction, the Federal Circuit explained that, before the plaintiff's retirement, he statutorily was entitled to pay as an active-duty member of the military. Id. at 1321. If, as he alleged, his separation "was involuntary and improper, [his] statutory right to pay [would] not [have been] extinguished, and [would] . . . serve[] as a basis for Tucker Act jurisdiction," id., as the Tucker Act provides for jurisdiction in the Court of Federal Claims when, inter alia, a plaintiff's claim is based on a money-mandating statute, such as the one providing for pay to those on active duty. Id. The separation would be improper if it resulted from "harmful procedural error in the process of deciding Adkins's application to have removed from his [record] material that caused his name to be taken off the promotion list." Id. at 1327. That court, however, remanded the matter to the trial court and, therefore, did not reach the merits of the plaintiff's claim. Id.

Plaintiff's argument in support of this court's jurisdiction relies on Sanders and Adkins. According to plaintiff, these cases stand for the proposition that a discharge is improper if it resulted from the existence of procedural errors in a performance report. Pl.'s Br. filed Oct. 11, 2011, at 6-7. The Court of Federal Claims thereby is vested with jurisdiction because discharged servicemembers can assert an entitlement to back pay pursuant to statutory authority mandating payment to active-duty members of the military. See id. Plaintiff further notes that, in assuring this court's jurisdiction over such matters, the Federal Circuit did not impose a "but for" test, requiring a plaintiff to demonstrate that, but for the procedural errors alleged, he would have been promoted. See id. at 7. The Federal Circuit explained its rejection of a "but for" test, as follows:

> [C]arried to its logical conclusion, the defendant's but for test would, assuming a plaintiff could produce any viable proof under it at all, place on the court the burden of deciding the issue of promotability. We are not a super selection board. We have repeatedly made it clear that deciding who gets a promotion

is not our responsibility, absent proof of a legal right to it which has been violated. Simply stated, the effect of adopting and strictly applying the ["but for"] test . . . would be to slam shut the courthouse door to review of military board actions, no matter how such boards might abuse their discretion and violate their regulations and the statutes. . . . [W]e reaffirm that material factual errors and prejudicial injustices which are not corrected rise to the level of legal error in that the refusal to correct them is in derogation of the mandate of the boards' enabling statutes and, where pay is lost and claimed, [the Military Pay Act, the Tucker Act, and the statute governing correction of military records] enable us to review and right the wrong.

Sanders, 594 F.2d at 816 (citations omitted). Plaintiff challenges that defendant, despite its knowledge that plaintiff—like the Sanders plaintiff—alleged that erroneous material caused his failure to promote, insists that jurisdiction is wanting and essentially demands that plaintiff also show that, but for the erroneous material, he would have been promoted. See Pl.'s Br. filed Oct. 11, 2011, at 7.

Contrary to plaintiff's contention, defendant's briefs do not reference the "but for" test or advocate for its application. Nonetheless, defendant does not agree that Sanders and Adkins are controlling; rather, defendant distinguishes these decisions as presenting factual situations in which correction boards already had concluded that performance reviews were tainted by procedural errors, but the defective reviews remained in the record.

Indeed, it is troublesome that, despite the clear jurisdictional affirmations in these and other analogous precedential rulings, defendant has opted to challenge jurisdiction. Defendant may be correct that in both cases relied upon by plaintiff, the correction boards previously had identified procedural errors in the performance reviews, see Adkins, 68 F.3d at 1328; Sanders, 594 F.2d at 808, yet nowhere has the Sanders court or other courts imposed a requirement that the correction board first determine that the subject performance review contain a procedural error in order for this court to assume jurisdiction. Rather, the relevant cases state that a plaintiff invokes the court's jurisdiction under the Military Pay Act by alleging that discharge was improper because it was based on a procedural error. See Adkins, 68 F.3d at 1321. If the discharge was improper, then the plaintiff's statutory right to pay is not extinguished, and he can properly state a claim under the Military Pay Act. Id. As noted, this consequence follows because the Military Pay Act confers a right to payment on a servicemember until he is properly discharged. See id.

Plaintiff's claim fits precisely within Hary's "crowded parade of suits by former military officers" who file suit based on the military's affecting a statutory right to pay based on a defective performance report. Hary, 618 F.2d at 705. Plaintiff alleges that his separation from the USMC resulted from a procedural error in the process of determining

whether an adverse fitness report should be removed from his record.  Specifically, he contends that the report was not prepared and reviewed in accordance with governing regulations.  As such, he alleges that his separation is improper because it is based on a defective fitness report.  Having alleged that separation was improper, plaintiff pleads entitlement to pay and thereby invokes the Military Pay Act and the Court of Federal Claims' Tucker Act jurisdiction.   Accordingly, this court has jurisdiction over this matter.

## II.  Standard of review

### 1.  Judgment on the administrative record

The parties filed cross-motions for judgment on the administrative record pursuant to RCFC 52.1, which provides a procedure by which parties may seek an expedited trial on a "paper record, allowing fact-finding by the trial court." Bannum v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005).  The parties are limited to the agency record and individual statements of fact submitted under RCFC 52.1.  The court must make its findings of fact from this record as if it were conducting a trial. Id. at 1357.

### 2.  Decisions of boards for correction of military records

Plaintiff challenges the decision rendered by a correction board.  The court reviews such decisions under a deferential standard so as not to "disturb the decision of the [correction board] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." Barnick v. United States, 591 F.3d 1372, 1377 (Fed. Cir. 2010) (citing Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005)).  "This [standard of review] necessarily limits the Court of Federal Claims' review to the administrative record," except in extremely limited circumstances when the court may consider "'extra-record' evidence." Metz, 466 F.3d at 998.  Plaintiff's burden is to show by "cogent and clearly convincing evidence" that the decision of the correction board fails this standard. Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (citation omitted) (internal quotation marks omitted).  Plaintiff also must overcome the presumption of regularity that attaches to the actions of a correction board. See Richey v. United States, 322 F.3d 1317, 1326 (Fed. Cir. 2003) (noting "the presumption of regularity that attaches to all administrative decisions" in the context of military board action).

In challenging a correction board's decision following separation from active duty, a claimant may file suit in the Court of Federal Claims for back pay. Hary, 618 F.2d at 706.  To demonstrate that the board's decision does not meet the arbitrary and capricious standard in such cases, a claimant

> must show both that (a) there was a material legal error or an injustice in the
> proceedings of the correction board, or other entity within the military
> department, which led to the adverse action against him, and also (b) that there
> is an adequate nexus or link between the error or injustice and the adverse
> action.

Id.  Where an allegedly defective performance report resulting in a failure to promote forms
the basis of a claimant's suit, courts will grant the requested relief when "the presence of the
defective [report] ma[kes] [the claimant's] whole record before the selection board
something less than 'substantially complete and fair.'"  Id. at 709 (quoting Sanders, 594 F.2d
at 814).

III.  Plaintiff's citations of error in the correction board's decision

Plaintiff would have the court overturn the Board's decision because the fitness report
leading to his termination was not prepared in accordance with MCO P1610.7F—the
governing regulation.  Pl.'s Br. filed Oct. 10, 2011, at 9-10.  Plaintiff cites Guy v. United
States, 608 F.2d 867, 870 (Ct. Cl. 1979), in which the Court of Claims stated that, "if [fitness
reports] are not prepared in the manner required by law, they are not properly included in an
officer's records before selection boards."  Id. at 870.  If the violation is "'substantial and
prejudicial,'" legal error has occurred, and a court may reverse a correction board's decision.
Pl.'s Br. filed Oct. 10, 2011, at 9 (quoting Skinner, 594 F.2d at 828).

First, plaintiff contends that the RS violated MCO P1610.7F because he failed to
individually address various character and performance traits in evaluating plaintiff; rather,
he "mixed and matched distinct, separate, evaluated characteristics to provide a misleading
overall evaluation."  Id. at 11.  As an example, plaintiff explains that the Mission
Accomplishment section of the fitness report evaluates an individual in two
areas—performance and proficiency.  Id.  While the RS gave him the lowest rating for
proficiency, see MCO P1610.7F ¶ 4007.3.b.(1), he provided a narrative explanation of this
deficiency in evaluating plaintiff as to the second attribute—performance.  Pl.'s Br. filed Oct.
11, 2011, at 11.  Because MCO P1610.7F identifies "proficiency" and "performance" as
distinct attributes that measure different characteristics, plaintiff contends that the RS's
analysis was in error to the extent that it treated a deficient rating in one area as resulting in
a deficiency in the other area.  Id.

Plaintiff also identifies alleged errors in the "Intellect and Wisdom" section of the
fitness report.  Id. at 12.  The regulation instructs the RS to measure plaintiff's intellect and
wisdom by assessing three attributes: (1) professional military education, (2) decisionmaking
ability, and (3) judgment.  See MCO P1610.7F ¶ 4010.1.a.  Plaintiff formulates his challenge,
as follows: "While the RS discussed at length an alleged performance failure in the narrative

11

comment[s] . . . there was no discussion of plaintiff's 'intellect and wisdom' nor how a failure of intellect or wisdom contributed to the performance failure." Pl.'s Br. filed Oct. 11, 2011, at 12.    Plaintiff thus concludes that, despite assessing plaintiff's on-the-job performance, the RS's evaluation did not comply with the regulation because he failed to consider or apply the three evaluation standards set out in MCO P1610.7F ¶ 4010.1.a.  The PERB, in addressing these alleged failures to follow Marine Corps regulations, attributed any inconsistencies to the "'great deal of overlap in attributes that are evaluated on a fitness report'" and concluded that the RS's "markings and justifications" were consistent with MCO P1610.7F.  Id. (quoting AR 122).

Second, plaintiff charges that the RO failed to resolve factual discrepancies between plaintiff and the RS as required by MCO P1610.7F ¶ 5004.1., which provides that, if a servicemember submits a written statement disagreeing with the RS as to factual matters, "the RO must . . . [t]ake action to resolve inconsistencies and disagreements."  Plaintiff cites Camporini v. Secretary of the Navy, No. 96-2732, slip op. (D.D.C. Sept. 23, 1998), in which the plaintiff received an adverse fitness report that referenced pending investigations "of which plaintiff and the problems existing under his leadership were the subject."  Id. at 2. The report alleged that the plaintiff improperly had discussed these pending investigations with members of his command.  Id.  After receiving the report, plaintiff submitted a "statement of facts concerning the timing of events that suggests he did not try to affect the outcome of the investigation."  Id. at 9.  Armed with the performance report and the plaintiff's response, the RO affirmed the information contained in the performance report. Id.  On review the United States District Court for the District of Columbia determined that the "[p]laintiff recount[ed] a specific story of how events transpired, and [the RO] completely failed to reconcile [the plaintiff's] version with [that in the RO's] report."  Id.  Noting that the governing regulations imposed a duty on the RO to resolve inconsistencies between the plaintiff's version of events and that contained in the fitness report, the court concluded that the "report was not prepared in accordance with legal requirements" and granted plaintiff's motion for summary judgment.  Id. at 10-11.

Attempting to adduce critical similarities with Camporini, plaintiff contends that a number of factual disputes remain unresolved by the RO.  The fitness report stated that, although plaintiff reported that all SSDRs had been entered into the record books, this statement was untrue.  AR 7.  Plaintiff's response informed the RO that the requirement that such awards be entered into service records ended several years ago.  See id.  Additionally, plaintiff challenged the RS's statement that responsibility for preparation of administrative separation ("ADSEP") packages was reassigned from plaintiff to the Judge Advocate because the packages prepared by plaintiff were fraught with mistakes.  Id. at 14 (citing AR 6).  Plaintiff's rebuttal explained that this duty was not reassigned; rather, before plaintiff deployed, he was instructed to give the ADSEP packages to the Judge Advocate for additional review.  Id.  Plaintiff also responded to statements claiming that he failed to take

responsibility for his shortcomings and that his failure to supervise his section led to an inability to process awards and secure confidential personnel information. Id. at 15. Plaintiff asserted that, to the contrary, he did own up to his shortcomings. Id. He also described the access that various personnel have to confidential information, id., an explanation that failed to shed any light on the RS's finding that plaintiff's inadequate supervision resulted in a failure to secure private information.

Plaintiff further disputes the RS's statements that he "'micromanaged'" and "'[f]ailed to develop his subordinates.'" Pl.'s Br. filed Oct. 11, 2011, at 16 (quoting AR 6). Plaintiff contends that he rebutted these remarks with his assertions that he did not micromanage his Marines and that he scheduled classes for his section to teach them how to use the administrative systems. Id. Finally, plaintiff argues that the RO failed to resolve factual inconsistencies relating to the RS's comments that plaintiff failed to advise and assist a subordinate whose spouse would require care following an upcoming surgery. Id. at 17. The RS's characterization indicated that, by failing to identify alternatives to the subordinate's taking emergency leave, plaintiff "'plac[ed] the command in a reactive position, forcing the command to send the marine home from a combat zone.'" Id. (quoting AR 6-7). The RS further stated that plaintiff did not reprimand the subordinate for possessing another Marine's Red Cross message until the command became aware of this unauthorized possession. Id. Plaintiff denied this characterization and stated that he provided the subordinate with examples of what he needed to research to ensure he did not need to apply for emergency leave. Id. He further noted that, as soon as he learned that the subordinate possessed another Marine's Red Cross message, he counseled him not to use the document. Id. Given these factual disagreements and inconsistencies, plaintiff asserts that the RO failed to comply with MCO P1610.7F ¶ 5004.1.a., thereby rendering the fitness report considered by the BCNR defective.

Plaintiff's third argument also involves the Marine who took emergency leave to care for his spouse. Plaintiff challenges that the TOS failed to comply with MCO P1610.7F ¶ 5005.3.a.(1), which imposes a duty on the TOS to resolve factual inconsistencies and disagreements between plaintiff and the RO. The RO's comments stated that "'[a] workable solution (in-home medical care using TRICARE resources) was identified by [a member of the command], but inadequate follow-up on the part of [plaintiff] resulted in no workable solution being developed.'" Pl.'s Br. filed Oct. 11, 2011, at 19 (quoting AR 15). Plaintiff responded that, although the Tricare option was identified, follow-up confirmed that "'Tricare did not offer the home care that [the subordinate's] spouse required.'" Id. at 20 (quoting AR 19). Accordingly, plaintiff contends that a "classic factual dispute" was presented, id., and that, because the TOS did not "take action to resolve [this dispute]," MCO P1610.7F ¶ 5005.3.a.(1), the fitness report before the BCNR was defective and not prepared in accordance with governing regulations.

Plaintiff's fourth and final argument contends that the fitness report is defective because the TOS added new, adverse information to the report without giving plaintiff the opportunity to respond to the new information as required by MCO P1610.7F ¶ 5005.3.c. Pl.'s Br. filed Oct. 11, 2011, at 20. According to plaintiff, this new information includes statements that plaintiff admitted that he was "'to[o] involved with the minutia of his section'" and had "'poor communication with the Admin Chief,'" as well as a remark by the TOS that plaintiff was "'in over his head as an adjutant.'" Id. at 21-22 (quoting AR 20-21). Introduction of this new material required the TOS to refer the report to plaintiff "for acknowledgment and opportunity to make a statement." Id. at 22. The TOS's failure to do so, plaintiff urges, renders the report defective.

Defendant argues for upholding the BCNR's decision because the fitness report does not suffer from any procedural defects. First, defendant recasts plaintiff's argument that the RO failed to resolve factual discrepancies, explaining that plaintiff actually is arguing that the RO "failed to specifically address *all* of the alleged discrepancies in its findings." Def.'s Br. filed Aug. 11, 2011, at 12. Defendant recites the BCNR's finding that, although the RO "'may not have directly addressed every argument raised by [plaintiff] in his lengthy rebuttal, he did thoroughly and completely adjudicate [the] report.'" Id. at 12-13 (quoting AR 38). The RO set forth the inconsistencies and delineated the process used to resolve them, which included soliciting input from plaintiff, the RS, and others in plaintiff's command. Id. at 13. This response complies with MCO P1610.7F ¶ 5004.1.a., which requires that the RO "'take action' to resolve discrepancies," but does not require "that each discrepancy be specifically addressed in the narrative comments." Def.'s Br. filed Nov. 10, 2011, at 3.

Defendant further notes that, given the presumption of regularity that attaches to correction board decisions, "[t]his Court should uphold the BCNR's determination that MCO P1610.7F, ¶ 5004.1a does [not] require a specific rebuttal to each and every allegation contained in [plaintiff's] statement of facts." Def.'s Br. filed Aug. 11, 2011, at 13. Defendant continues that, because the regulation "does not specifically state the degree or manner in which a Reviewing Officer must adjudicate differences, and here, the agency properly applied its 'fair and considered judgment' in finding that it was not violated," the court should accord "broad deference" to the BCNR's decision. Id. at 14 (citations omitted).

Defendant responds to plaintiff's argument that the TOS violated MCO P1610.7F ¶ 5005.3.c. by adding new material to the report without giving plaintiff an opportunity to respond. Id. at 15. According to defendant, "[t]he record does not support [plaintiff's] contention" because the TOS's report merely "commented on five areas, *all* of which had been mentioned previously in the comments provided by the Reporting Senior and the Reviewing Officer." Id. Presumably, defendant explains, the "new" information to which plaintiff refers consists of the TOS's recordations of statements that plaintiff made to the TOS. Def.'s Br. filed Nov. 10, 2011, at 4. Such remarks do not constitute "new adverse

material" warranting an opportunity for response by plaintiff because they were provided by plaintiff himself.  See MCO P1610.7F ¶ 5005.3.c.

Defendant next makes the broad argument that the BCNR's decision was supported by substantial evidence.  Def.'s Br. filed Aug. 11, 2011, at 17.  Defendant notes that in his responses to the RS and RO, plaintiff admitted to some of the matters that accounted for the adverse characterization of the fitness report.  Id. at 17-18.  For example, plaintiff admitted that (1) his statement that all awards were reported was inaccurate, AR 9; (2) his reports contained poor grammar, AR 10; (3) the articles that he was instructed to write were not deemed acceptable by his command, AR 11; and (4) he was more involved with his subordinates than necessary.  See Def.'s Br. filed Aug. 11, 2011, at 17-18.  In light of these admissions, plaintiff cannot "satisfy his burden of demonstrating that his chain-of-command, the PERB, or the BCNR lacked substantial evidence to support the fitness report."  Id. at 18.  Defendant proffers that whether plaintiff performed well as a Marine is a decision reserved to the discretion of military officers.  Id.  The court's task is only to assess "whether the BCNR, relying upon the opinion of the PERB and the record before it, had a 'rational basis' for evaluating [plaintiff's] performance as it did."  Id.  Because plaintiff has corroborated much of the information resulting in the adverse characterization of the report, defendant argues that the BCNR's decision undisputedly was based on substantial evidence.

Finally, defendant challenges plaintiff's argument that the RS did not properly report on all of the character traits identified in each section of the fitness report.  Def.'s Br. filed Nov. 10, 2011, at 5.  Regarding plaintiff's assertion that the attributes are distinct and separate and should be addressed in that same manner, defendant argues that MCO P1610.7F provides for a more generalized evaluation.  Id. at 6.  The regulation provides:

> The fitness report describes the "whole Marine" both on and off duty.  This picture goes beyond the [Marine]'s assigned duties (section B) and what the Marine accomplished (section C); it also records the manner in which the Marine discharged those duties and responsibilities.  Sections D, E, F, and G comprise 13 attributes that give the RS a *broad cross section of areas to evaluate* the [Marine] that the Marine Corps deems most important.

MCO P1610.7F ¶ 4006.1. (emphasis added).  According to defendant, the provision stating that various attributes are distinct and separate is not part of the general instructions on how to complete a fitness report; rather, that provision addresses the attributes in the Mission Accomplishment category, requiring the RS to "consider[] the 'distinct, separate' components of a[] [Marine]'s performance and his proficiency in mission accomplishment."  Def.'s Br. filed Nov. 10, 2011, at 6.  Consequently, the general instruction indicating that reviewers are provided with "a broad cross section of areas to evaluate," MCO P1610.7F ¶ 4006.1., contradicts plaintiff's contention and indicates that the fitness report

should provide a broad picture of plaintiff and his abilities, Def.'s Br. filed Nov. 10, 2011, at 6-7.

Although plaintiff has articulated correctly the applicable case law, he has been overzealous in advancing his position.  His responses to the RO and RS contain repetitive arguments that, for the most part, are based on no more than mere disagreement with the opinions expressed by the reviewers.  Nonetheless, the court does find merit in one argument, necessitating a remand to enable the BCNR to consider plaintiff's case on the basis of a valid fitness report.

Plaintiff's argument that the RS failed to address individually various character and performance traits is without merit.  Although the RS did not identify and specifically address each listed attribute, the fitness report was prepared in accordance with MCO P1610.7F, which does not require the RS to provide narrative comments regarding each attribute.  To the contrary, the regulation provides that the RS is given "a broad cross section of areas to evaluate" and that, "[c]ollectively, these attributes provide a clear picture of the Marine's demonstrated capacities, abilities, and character."  MCO P1610.7F ¶ 4006.1.  The record contains substantial evidence indicating that the RS considered the cited attributes in completing the fitness report.  Plaintiff's own admissions in his rebuttal comments further support information considered by the RS and included in the report.

Plaintiff also has argued that the fitness report is in error because the TOS added new, adverse material without affording plaintiff an opportunity to respond.  This argument is baseless.  The TOS's comments are responsive to information presented in the RO's and RS's reports, as well as in plaintiff's rebuttals.  See AR 20-21.  To the extent that the TOS deduced conclusions based on information contained in the various reports he reviewed, this is not new information.  Plaintiff's argument in this regard would instruct the TOS either to rubberstamp the RS's and RO's conclusions or completely disregard them, but not to make his own conclusions based on the information presented to him.  This is not a reasonable interpretation of the TOS's role.  Furthermore, where the allegedly new and adverse material was provided by the plaintiff, plaintiff has no basis to contend that he was denied an opportunity to respond to that information.  The regulation provides plaintiff such an opportunity when "*the third officer's remarks* add new adverse material," not when the plaintiff himself adds that material.  See MCO P1610.7F ¶ 5005.c.3. (emphasis added).

Ultimately, plaintiff challenged the validity of the fitness report because the RO and TOS failed to resolve factual discrepancies between plaintiff's version of events and that contained in the fitness report as required by MCO P1610.7F.  Plaintiff provides a number of examples of factual discrepancies, but only one is supported by the administrative record—whether or not the Tricare in-home medical care option was an available solution of which plaintiff should have become aware.  Plaintiff's other challenges—that he did not

falsely report that all SSDRs were recorded, that he did not micromanage his troops, that responsibility for preparation of ADSEP packages was not reassigned, and that he did not own up to his shortcomings—either express mere disagreement with the findings in the fitness report or are corroborated by plaintiff's subsequent admissions.  This is not the case with respect to the Tricare option.  The RO indicated that a workable solution—Tricare in-home medical care—was available to assist a subordinate's spouse.  AR 15.  Concluding that plaintiff failed to identify this option as an alternative to emergency leave, the RO cited this situation as negatively reflecting on plaintiff's ability to perform his duties.  See id. Plaintiff's response, which was reviewed by the TOS, challenged this finding, contending that the Tricare option was not available to the subordinate's spouse.  AR 19.

Despite this discrepancy between plaintiff's rebuttal and the RO's report, the TOS reported that plaintiff "failed to thoroughly research available solutions that a young Marine in his section needed."  See AR 20.  This statement reflects that the TOS had concluded that Tricare in-home medical care was an available option, yet the TOS did not indicate whether or not he took steps to verify the availability of in-home care—which presumably would have required no more than a telephone call to a Tricare representative—in accordance with MCO P1610.7F ¶ 5005.3.a.(1).  According to plaintiff, because the TOS's report did not state whether or not he confirmed the availability of the Tricare option, the TOS did not resolve the dispute and thus violated the command of the regulation.

Defendant responds that, although the regulation instructs the TOS to "take action to resolve inconsistencies," MCO P1610.7F ¶ 5005.3.a.(1), the TOS did not violate this command by failing to "mention each and every factual dispute contained in [plaintiff]'s three-page single-spaced rebuttal. . . . [because] there is no requirement that each discrepancy be specifically addressed in the narrative comments."  Def.'s Br. filed Nov. 10, 2011, at 3. Defendant cites Federal Circuit precedent that "'failure to mention specific evidence does not mean . . . fail[ure] to consider that evidence.'"  Id. (quoting Melendez Camilo v. United States, 642 F.3d 1040, 1045 (Fed. Cir. 2011) (citing FMC Corp. v. Hennessy Indus., Inc., 836 F.2d 521, 524 (Fed. Cir. 1987))).  Moreover, defendant advocates that the court must presume that the TOS performed his role in accordance with governing regulations and that the BCNR correctly construed the regulations.  See id. (citation omitted).  It is defendant's position that the absence of an explicit reconciliation of the Tricare dispute in the TOS's report does not indicate that the TOS failed to consider the dispute or discharge his duty to resolve the inconsistency; rather, the court must presume that the TOS acted in accordance with MCO P1610.7F ¶ 5005.3.a.(1).

Although defendant's response accurately recites applicable legal principles and the regulation does not require the TOS specifically to address each discrepancy, MCO P1610.7F ¶ 5005.3.a.(3) mandates that the TOS "[i]ndicate the actions taken or findings of fact."  See Pl.'s Br. filed Dec. 13, 2011, at 4-5. Neither was reported in the TOS's statement, and the

TOS appeared to reiterate information provided by the RS and RO.  Several matters that plaintiff identifies as factual discrepancies aptly can be described as mere disagreements with the opinions expressed by the reviewers, justifying their omission from discussion by the TOS, but the Tricare issue is not one of them.  Indeed, the Tricare issue was a specific, identifiable incident that plaintiff's command relied on repeatedly to demonstrate his substandard performance.   Other stated shortcomings—such as deflecting blame and micromanaging subordinates—reflect character traits and do not as easily measure plaintiff's ability to perform his role as Battalion Adjutant.  This may explain why the Tricare issue received greater attention by plaintiff's reviewers and appeared central to the decision to relieve plaintiff of his duties.

This court agrees with plaintiff that the fitness report considered by the BCNR did not comply with governing regulations because the TOS did not follow the mandate of MCO P1610.7F ¶ 5005.3.a.  The regulation charges the TOS to act to resolve each inconsistency and, in accordance with MCO P1610.7F 5005.c.3.a.(3), to indicate what was done or how the matter was resolved.  A mechanistic application of the language that defendant quotes from the Federal Circuit's opinion in Melendez Camilo to infer that the TOS ruminated on the factual discrepancy would neuter the regulation.  In Melendez Camilo, another case on review from a correction board, the plaintiff objected to the correction board's failure to mention specifically contested performance reports.  The case at bar involves a regulation that requires the Marine reviewers to do just that.  Because the TOS did not comply with the regulation, the report relied on by the BCNR did not comply with governing regulations.  Consequently, this matter is remanded with instructions to the BCNR to reconsider plaintiff's application following a review of the aforementioned factual discrepancy undertaken in accordance with MCO P1610.7F.

## CONCLUSION

Plaintiff's cross-motion for judgment on the administrative record is granted in part, and defendant's motion to dismiss or for judgment on the administrative record is denied, consistent with the foregoing.  Accordingly,

**IT IS ORDERED**, as follows:

1.  Pursuant to RCFC 52.2, this matter is remanded to the Department of the Navy for a period of ninety days or until April 30, 2012, for action by the Board for Correction of Naval Records.

2.  On or before April 30, 2012, the Department of the Navy shall file with the Clerk of the Court the Board's final decision or notice of other action pursuant to RCFC 52.2(e).

3.  Upon the filing of the notice of decision or other action on remand, the parties shall file a Joint Status Report that shall adhere to the requirements of RCFC 52.2(f).


/s/ Christine O.C. Miller

_____
**Christine Odell Cook Miller**
Judge