# In the United States Court of Federal Claims

No. 11-160C
(Filed December 20, 2012)

```
* * * * * * * * * * * * * * * * * *  *
                                     *
LAWRENCE MENDEZ, JR.,                *  Military pay; Military Pay Act, 37 U.S.C.
                                     *  § 204 (2006); motion for judgment on the
              Plaintiff,             *  administrative record; review of
                                     *  correction board action; Marine Corps
     v.                              *  Order P1610.7F, Performance Evaluation
                                     *  System (Nov. 19, 2010); harmless error;
THE UNITED STATES,                   *  presumption of regularity.
                                     *
              Defendant.             *
                                     *
* * * * * * * * * * * * * * * * * *  *
```

Charles W. Gittins, Middletown, VA, for plaintiff.

Matthew F. Scarlato, Washington, DC, with whom was Assistant Attorney General Tony West, for defendant. Lt. Chris Jeter, Department of the Navy General Litigation Division, of counsel.

### MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

This case is before the court on the parties' cross-motions for judgment on the administrative record after remand to the Department of the Navy for action by the Board for Correction of Naval Records. Plaintiff seeks correction of his military records for improper discharge from the United States Marine Corps based on two failed attempts at promotion stemming from a challenged adverse fitness report. Argument is deemed unnecessary.

### FACTS

I. Background

The facts contained herein are drawn from the administrative record and restate those set forth in the opinion and order that directed a remand. See Mendez v. United States, 103

Fed. Cl. 370, 371-74 (2012). Lawrence Mendez, Jr. ("plaintiff"), formerly served as an officer in the United States Marine Corps (the "USMC"). AR 1. In September 2006 he was assigned duties of Battalion Adjutant of the 1st Battalion, 12th Marine Regiment, 3rd Marine Division. Id. His unit was deployed to Iraq in support of Operation Iraqi Freedom on March 28, 2007. Compl. filed Mar. 14, 2011, ¶ 4. In July 2007 plaintiff was relieved of his duties as Battalion Adjutant for cause by his commanding officer, Lt. Col. Stephen E. Liszewski. AR 47. Following removal from his post, plaintiff was provided with a USMC Fitness Report (the "report" or the "fitness report") that evaluated his performance from February 1, 2007, through July 28, 2007. See id. at 1-8. The fitness report identified Lt. Col. Michael S. Casey as the Reporting Senior (the "RS") and Lt. Col. Liszewski as the Reviewing Officer (the "RO"). Id. at 1.

The RS initially prepared the fitness report on September 10, 2007. In that report the RS made several statements that described plaintiff as deficient in various evaluation categories. See id. at 2-7. In the Mission Accomplishment category, the fitness report stated that plaintiff lacked Military Occupational Specialty ("MOS") knowledge and an ability to lead. Id. at 2. The RS explained that plaintiff's failings in this regard resulted in "[c]ontinued inaccurate and false reporting of information on awards" and Sea Service Deployment Ribbons ("SSDRs"). Id. at 6. As for plaintiff's assessment in the Individual Character category, the report stated that plaintiff "did not accept responsibility for his short comings [*sic*]" and that he "deflected blame for problems that he caused." Id. at 2. The RS further noted that plaintiff "displayed and verbalized an insolent behavior towards senior officers in front of junior Marines." Id.

Plaintiff fared no better with respect to his evaluation in the Leadership category. The RS remarked that plaintiff's "[f]ail[ure] to supervise the administrative section" contributed to "correspondence riddled with mistakes, inability to process awards and failure to secure sensitive personnel information." Id. at 3. The RS further stated that plaintiff "[f]ailed to develop subordinates in functional areas," "micromanaged" Marines, and stifled any initiative his troops asserted. Id. at 6. The RS also questioned the manner in which plaintiff assisted a subordinate whose spouse was due to undergo routine surgery in the near future. Id. at 6-7. Noting that the command's policy was to limit the use of emergency leave, the RS chided plaintiff for "wait[ing] until the last possible minute" to assist the Marine in finding a way to ensure his spouse was cared for in his absence. Id. at 6. The RS commented that plaintiff's mismanagement "forc[ed] the command to send the Marine home from a combat zone." Id. at 7. Additionally, the RS stated that plaintiff knew that the Marine was improperly using a Red Cross message from another Marine who had been granted emergency leave as an example of how to word his own message to ensure that he, too, would be granted emergency leave. Id. Because the USMC does not favor granting emergency leave to deployed Marines, the young Marine's possession of the Red Cross

message was seen as an attempt to circumvent the policy favoring alternatives to emergency leave. See id. Despite his knowledge of this improper use, plaintiff failed to chastise the Marine or prevent use of the Red Cross message until his command became aware of the situation. Id.

With respect to the Intellect and Wisdom category, the RS questioned plaintiff's ability "to find timely solutions to problems," noting that this led to plaintiff's "failure to . . . facilitate . . . joining all Marines to the Task Force," id. at 4, in contravention of direct orders from the RS and the RO, id. at 7. Moreover, the RS indicated that plaintiff had falsely reported that the SSDRs were recorded in the record books for all Marines serving as a part of the Task Force. Id. In the Comparative Assessment section of the fitness report, the RS compared plaintiff to other Marines of the same grade and described plaintiff as "unsatisfactory." Id. at 5. In concluding, the RS opined that plaintiff should "not be considered for promotion with [his] contemporaries." Id. at 8.

Plaintiff submitted a five-page rebuttal to the RS's fitness report on September 14, 2007. See id. at 9-13. He provided his own narrative summary and challenged the RS's comments. He first explained that "[a]wards are no longer entered into a Marine[']s service record," id. at 9, and thus could not have been inaccurately reported. As for the SSDRs, plaintiff offered an alternative explanation for any perceived failures to record these ribbons, explaining that reporting was delayed because all personnel were being added to the reporting unit code used by plaintiff. Id. Plaintiff disputed allegations that he was disrespectful to superiors and micromanaged subordinates. Id. at 11. He stated that he advised the Marine whose spouse would need assistance following surgery of alternative ways to ensure that such care was provided. Id. In opposition to the RS's recitation, plaintiff noted that he counseled the Marine not to use the Red Cross message that he had obtained. Id. at 12.

On September 24, 2007, the RO reviewed the RS's report in conjunction with plaintiff's comments and added comments of his own. See id. at 14-16. Marine Corps Order P1610.7F, Performance Evaluation System, ¶ 2004.3.g. (Nov. 19, 2010), requires the RO to "[a]ssess adverse reports and adjudicate factual differences between the RS's evaluation and the [plaintiff]'s statement." \*/ In accordance with MCO P1610.7F ¶ 2004.3.g., the RO noted

---

\*/ The court recognizes that the version of MCO P1610.7F cited postdates the events that occurred in this case. Although earlier versions were found, the court will apply the provisions of the version provided by the parties in the administrative record. The court is operating under the assumption that, if the applicable paragraphs in this later version differed substantively from those in effect at the time this matter arose, the parties would have included the earlier version in the administrative record.

that he "identified the . . . inconsistencies between RS and MRO ["Marine Reported On," in this case, plaintiff] statement[s] that require adjudication [and] . . . in adjudicating th[o]se inconsistencies . . . solicited input from the MRO, the RS, appropriate staff officers, commanders, and senior enlisted advisors to clarify differences between the report and the MRO's rebuttal." AR 14. The RO's review confirmed many of the RS's findings. Specifically, the RO stated that plaintiff micromanaged his Marines to such an extent that they were unable to accomplish their assigned tasks. Id. He also noted that plaintiff occasionally would cancel scheduled training exercises and, instead, would have "the section conduct physical training or watch videos for entertainment." Id. at 15. Further, the RO found that plaintiff would assign tasks to his Marines without coordinating with the officer who would oversee completion of these tasks and later would attempt to hold the overseer accountable when tasks were not completed. Id. The RO also determined that plaintiff—sometimes in front of subordinates—"displayed argumentative and insolent behavior" toward superiors. Id. Lastly, the RO found that plaintiff falsely reported that all of the SSDRs had been recorded and failed to clarify his report when informed that his assertion was inaccurate. Id. at 15-16.

In reviewing the manner in which plaintiff assisted the Marine whose spouse was to undergo surgery, the RO noted that the Marine informed plaintiff of the surgery thirty days before it was scheduled. Id. at 15. Despite this advance notice, the RO found that plaintiff "failed to develop a solution to th[e] problem that would facilitate care for the wife and allow the Marine to remain on deployment." Id. One member of the command identified "in-home medical care using TRICARE resources" as a "workable solution," but, according to the RO, plaintiff failed to follow up regarding this option, and it therefore was not made available to the Marine and his wife. Id.

Plaintiff responded to the RO with a three-page rebuttal on September 27, 2007. See id. at 17-19. He disputed the RO's finding that he replaced scheduled training exercises with physical training or entertainment and explained that, when he did opt for physical training, he had his men "execute combat patrols formations, [use] hand and arm signals, set[] up a vehicle checkpoint . . . , and [practice] first aid . . . ." Id. Plaintiff then justified his failure to coordinate task assignments with the officer who would oversee their completion by noting that that officer "spent 13 to 17 days visiting other sites within the Task Force." Id. at 18. Plaintiff further contended that he did communicate with this officer and never placed blame on him when tasks were not completed. Id. As for his inaccurate report that all of the SSDRs were recorded, plaintiff did not recollect that anyone informed him that his report was in error. Id. at 19. Lastly, in addressing the Marine who sought emergency leave, plaintiff noted that he was in "disbelief" upon learning of the in-home medical care option. Id. He then stated that, despite the existence of such a program, he learned upon further inquiry that "Tricare did not offer the home care that [the Marine's] spouse required." Id.

4

On October 7, 2007, Brig. Gen. Charles M. Gurganus, serving as the Third Officer Sighter (the "TOS"), reviewed the fitness report and comments from the RO and plaintiff. See id. at 20-21. The TOS identified those areas in which plaintiff disagreed with the RS and the RO. Id. Despite acknowledging the areas of disagreement, the TOS confirmed the findings of the RS and the RO. Id. at 20. Specifically, he noted that plaintiff admitted that he failed to submit reports on time, was "too involved with the minutia of the section," and had "poor communication with the Admin Chief." Id. The TOS also stated that plaintiff "failed to thoroughly research available solutions that a young Marine in his section needed," yet "was surprised when the situation could not be resolved." Id. Finally, the TOS commented that plaintiff did not deny the accusation that he falsely reported that all of the SSDRs were recorded. Id. at 21. The TOS thus concluded that plaintiff "failed to perform his duties to the satisfaction of both the RS and the RO." Id.

II. Procedural history

The following procedural history recited in Mendez, 103 Fed. Cl. at 374-75, has been updated to reflect the proceedings on remand. On December 3, 2008, plaintiff appealed the adverse fitness report by filing an Application for Correction of Military Record with the Board for Correction of Naval Records (the "BCNR" or the "Board"). Id. at 126. Plaintiff mounted four challenges: (1) the fitness report did not comply with MCO P1610.7F and contained inconsistent statements from the RS who prepared the report; (2) the RO failed to resolve various disagreements between the RS and plaintiff; (3) the TOS introduced new adverse material without providing plaintiff an opportunity to respond to the new material; and (4) the TOS failed to resolve disagreements between the RO and plaintiff. See id. at 127-31. Plaintiff explained that the fitness report set forth various attributes and required the RS to evaluate the extent to which plaintiff fulfilled those attributes. According to plaintiff, the RS rated plaintiff adversely without providing proper justification. Id. at 127. The USMC Performance Evaluation Review Board (the "PERB") conducted the first review and issued an advisory opinion on March 2, 2009, in which it concluded that "the contested fitness report [wa]s administratively correct and procedurally complete." Id. at 122. The PERB, noting that many of the evaluated attributes overlapped, found that the RS had properly justified his ratings and that plaintiff's contention to the contrary lacked merit. Id.

Plaintiff thereafter filed an undated rebuttal to the PERB's report. See id. at 16-19. On April 9, 2009, the BCNR considered plaintiff's application and denied his request, indicating that the Board "substantially concurred" with the PERB's report. Id. at 114. Acknowledging the PERB's finding that plaintiff did not "argue that the facts of the report are untrue or unjust," id. at 123, the BCNR noted that plaintiff's rebuttal letter explicitly did challenge the fitness report as untrue or unjust, id. at 114. On August 21, 2009, plaintiff filed a request for reconsideration. See id. at 110; Compl. ¶ 22. The PERB responded on

5

December 28, 2009, with an advisory opinion that would deny plaintiff's request for removal of the adverse fitness report from his record. See AR 98-99. Plaintiff filed a rebuttal letter to the PERB decision on January 7, 2010. See id. at 94. On April 9, 2010, the BCNR voted to deny the requested relief. Id. at 95.

On March 14, 2011, plaintiff filed a complaint in the United States Court of Federal Claims. He alleged that he was involuntarily separated after he was twice denied promotion to the rank of captain. Following removal from his post, plaintiff was provided with a fitness report that evaluated his performance for the period immediately preceding his removal. Alleging that the fitness report is defective in that it failed to comply with USMC regulations, plaintiff seeks reinstatement and back pay from the date of his relief from active duty, as well as removal of the contested fitness report from his record.

The court issued an earlier opinion on the parties' cross-motions for judgment on the administrative record on January 31, 2012. See Mendez, 103 Fed. Cl. 370. After an initial determination that the court had subject matter jurisdiction over this matter, see id. at 375-78, the court found that all but one of plaintiff's arguments were unavailing, see id. at 382-84. Specifically, the court held that the fitness report considered by the BCNR did not comply with applicable regulations requiring the TOS to resolve factual inconsistencies with respect to plaintiff's actions to assist the Marine whose spouse was to undergo surgery. Id. at 383. The court therefore remanded the matter to the BCNR with instructions to reconsider plaintiff's application for correction after a proper review of the factual inconsistencies surrounding that one fitness report item. Id. at 384.

Pursuant to court order, defendant supplemented the administrative record on November 1, 2012, with the BCNR's August 20, 2012 decision denying his application for relief and record of the BCNR proceedings on remand. See Def.'s Notice filed Nov. 1, 2012. The supplemented administrative record reflects the following proceedings on remand.

The PERB issued an advisory opinion on April 3, 2012, in which it considered the fitness report item at issue. AR 245-51. The PERB concluded that the item should be expunged from plaintiff's record because the TOS did not explain how he arrived at his conclusion regarding the item and did not address whether Tricare was a viable solution. Id. at 246. The PERB further explained that the viability of Tricare as a solution was not a central issue; rather, the concern was whether plaintiff was diligent in seeking a workable solution and informing his superiors as to his findings. Id. Although the PERB found that the TOS had failed to adjudicate the dispute regarding the item, it found that the item was not central to plaintiff's adverse report and that expungement of the entire report was unwarranted. Id. at 246-47. The PERB therefore recommended removal of the item from plaintiff's fitness report to be replaced with an indication that the attribute was not observed.

6

Id. at 247. The PERB also recommended removal of the narrative surrounding the item. Id. The amended fitness report thus was to remain a part of plaintiff's military record. Id. The Commandant of the Marine Corps directed that the fitness report be corrected as recommended. Id. at 242.

Plaintiff responded to the advisory opinion on May 27, 2012. Id. at 252-60. Plaintiff took issue with the PERB's statement that it had reviewed plaintiff's appeal in its entirety, arguing that he had submitted additional documents supporting his appeal that the PERB did not reference in its advisory opinion. Id. at 252. Plaintiff stated that he did not receive all pages of a color matrix that accompanied the opinion and that the pages he did receive minimized his arguments raising factual disputes. Id. at 252-53. Plaintiff urged that the Tricare issue "permeates the entire fitness report and was THE event that resulted in [plaintiff's] relief for cause" and that the combination of its importance and the finding that the item referencing it was not prepared in accordance with governing regulation warranted removing the fitness report in its entirety. Id. at 253 (capitalization in original).

The BCNR e-mailed plaintiff's counsel the attachments to the PERB advisory opinion by July 9, 2012, and plaintiff was given an opportunity to make a further submission. See id. at 270. Plaintiff did not respond, and the matter was presented to the BCNR. See id. at 266-67. By letter dated August 20, 2012, the BCNR reconsidered and denied plaintiff's application to remove the fitness report from his military record, finding that the evidence did not establish a probable material error or injustice. Id. at 241-44. The BCNR found that plaintiff's military record should be modified in accordance with the PERB's advisory opinion, and that the modified fitness report should remain in plaintiff's military record. Id. at 243. The BCNR further found that the modified fitness report was still adverse and that plaintiff's selection by the Captain Selection Board therefore "would have been definitely unlikely." Id. The BCNR accordingly concluded that there was no basis to set aside plaintiff's discharge. Id. The BCNR agreed that the record of the case on remand did not include the additional documents referenced in plaintiff's May 27, 2012 response to the PERB's advisory opinion, but noted that those documents had been referenced in the April 9, 2010 denial of plaintiff's application. Id.

## DISCUSSION

I. Standard of review

   1. Judgment on the administrative record

The parties filed cross-motions for judgment on the administrative record pursuant to RCFC 52.1, which provides a procedure by which parties may seek an expedited trial on a

"paper record, allowing fact-finding by the trial court." Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005). The parties are limited to the agency record and individual statements of fact submitted under RCFC 52.1. The court must make its findings of fact from this record as if it were conducting a trial. Id. at 1357.

    2. Decisions of boards for correction of military records

Plaintiff challenges the decision rendered by a correction board. The court reviews such decisions under a deferential standard so as not to "disturb the decision of the [correction board] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." Barnick v. United States, 591 F.3d 1372, 1377 (Fed. Cir. 2010) (citing Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005)). "This [standard of review] necessarily limits the Court of Federal Claims' review to the administrative record," except in extremely limited circumstances when the court may consider "'extra-record' evidence." Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006). Plaintiff's burden is to show by "cogent and clearly convincing evidence" that the decision of the correction board fails this standard. Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (citation and internal quotation marks omitted). Plaintiff also must overcome the presumption of regularity that attaches to the actions of a correction board. See Richey v. United States, 322 F.3d 1317, 1326 (Fed. Cir. 2003) (noting "the presumption of regularity that attaches to all administrative decisions" in the context of military board action).

In challenging a correction board's decision following separation from active duty, a claimant may file suit in the Court of Federal Claims for back pay. Hary v. United States, 618 F.2d 704, 706 (Ct. Cl. 1980) superseded in part by statute, 10 U.S.C. § 628 (2006), as recognized in Richey, 322 F.3d at 1323-24. 10 U.S.C. § 628 governs when allegations are leveled of unfairness in consideration by a promotion board, which is the gravamen of plaintiff's complaint insofar as he challenges his separation on the basis of the fitness report. The statute first requires a determination by the Secretary of the military department concerned that there was "material unfairness" in the selection process based upon a finding that

> (A) the action of the promotion board that considered the person was contrary to law in a matter material to the decision of the board or involved material error or fact or material administrative error; or
>
> (B) the board did not have before it for its consideration material information.

10 U.S.C. § 628(b)(1). Once a finding of material unfairness issues, the Secretary of the military department concerned may convene a special selection board to determine whether

the servicemember's record, if corrected, would warrant a recommendation for promotion. 10 U.S.C. § 628(b); see also Richey, 322 F.3d at 1324 (discussing 10 U.S.C. § 628). A federal court may review a decision not to convene a special selection board, but may only set that decision aside if it is "(i) arbitrary or capricious; (ii) not based on substantial evidence; (iii) a result of material error of fact or material administrative error; or (iv) otherwise contrary to law." 10 U.S.C. § 628(g).

II. Plaintiff's citations of error in the correction board's decision

The court finds that the decision to modify plaintiff's fitness report to exclude any mention of the Tricare issue rather than to remove the fitness report in its entirety was not arbitrary or capricious, contrary to law, or unsupported by substantial evidence. Upon review of the factual discrepancy surrounding the Tricare issue as ordered by the court, Mendez, 103 Fed. Cl. at 383-84, the PERB found that the TOS had not resolved the discrepancy in the appropriate manner and that all reference to the Tricare issue should be expunged from plaintiff's fitness report, AR 246. The BCNR agreed with the PERB's findings. Id. at 243.

Plaintiff has advanced the notion that the Tricare issue "permeates the entire fitness report," id. at 253, but the record does not support plaintiff's contention. As discussed above, plaintiff's fitness report contained several adverse items, including lack of MOS knowledge, id. at 2; lack of leadership ability, id.; inaccurate and false award information reporting, id. at 6; failure to accept responsibility, id. at 2; insolent behavior toward senior officers, id.; failure to supervise the administrative section resulting in mistakes, id. at 3; micromanagement of Marines, id. at 6; and inability to timely solve problems resulting in a failure to join Marines to a task force, id. at 4. The TOS confirmed the findings with respect to those items. Id. at 20. Not one of those items references the Tricare issue in any way, and none appears to be intertwined with that issue. Accordingly, it was appropriate to excise any reference to the Tricare issue from plaintiff's fitness report while leaving the remainder of the report intact. Moreover, in light of the presence of those other adverse items on plaintiff's fitness report, the BCNR appropriately found that the inclusion of the Tricare issue did not rise to the level of material error or injustice. The court has considered plaintiff's objection that the BCNR failed to take cognizance of all of his arguments and determines that the BCNR fully addressed the subject matter of the remand.

## CONCLUSION

Accordingly, based on the foregoing, plaintiff's cross-motion for judgment on the administrative record is denied, and defendant's cross-motion is granted. The Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED**.

No costs.

/s/ Christine O.C. Miller
_____
**Christine Odell Cook Miller**
Judge